# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT    ☒ INFORMATION    ☐ INDICTMENT    ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 371 - Conspiracy; and
27 U.S.C. § 205(c) and 18 U.S.C. - § 2 Commercial Bribery

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 18 U.S.C. § 371: 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment; and

27 U.S.C. § 205(c): 1 Year Imprisonment; 1 Year Supervised Release; $100,000 Fine; $25 Special Assessment.

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

**DEFENDANT - U.S**

▶ PATRICK BRIONES

DISTRICT COURT NUMBER
4:25-cr-00302 AMO

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction    ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution _____

Has detainer been filed? ☐ Yes ☐ No   If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

**FILED**
Sep 23 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court _____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE
SHOW DOCKET NO. _____

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
MAGISTRATE CASE NO. _____

Name and Office of Person Furnishing Information on this form: Craig H. Missakian
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Colin Sampson

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS    ☒ NO PROCESS*    ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address: _____

\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____ Before Judge: _____

Comments:

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

FILED
Sep 23 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> v. <br><br> PATRICK BRIONES, <br><br> Defendant. | Case No.  4:25-cr-00302 AMO <br><br> VIOLATIONS:  18 U.S.C. § 371 – Conspiracy to Defraud the United States; 27 U.S.C. § 205(c) – Commercial Bribery; 18 U.S.C. § 2 – Aiding and Abetting <br><br> OAKLAND VENUE |

I N F O R M A T I O N

The United States Attorney charges:

At all times relevant to this Information, unless otherwise indicated, and with all dates being approximate and all date ranges both approximate and inclusive:

<u>The Federal Alcohol Administration Act ("FAA" Act) and Regulations</u>

1. After the ratification of the Twenty-First Amendment to the United States Constitution in 1933, the retail sale and consumption of alcoholic beverages became legal again in the United States. The Twenty-First Amendment authorized states to institute laws to control the production, distribution, and sale of alcoholic beverages within their borders. Many states, including California, opted for a so-called "three-tier system" consisting of: manufacturers or importers of distilled spirits and wine ("suppliers"); wholesalers (also known as "distributors"); and retailers.

2. Congress passed the FAA Act in 1935. The Alcohol and Tobacco Tax and Trade Bureau ("TTB") was created in January of 2003, when the Bureau of Alcohol, Tobacco and Firearms was

reorganized under the Homeland Security Act of 2002. TTB is a bureau of the United States Department of the Treasury which, among other things, regulates alcohol beverage "industry members" including any person engaged in business as a supplier or wholesaler of distilled spirits, wine or malt beverages, and collects excise taxes.

3. The State of California's Alcoholic Beverage Control ("ABC") issues licenses to alcohol beverage suppliers, importers, warehousers, and wholesalers of alcohol beverages, among other categories.

4. TTB issues permits to alcohol beverage wholesalers ("distributors") and importers/manufacturers (hereafter "suppliers"), among other industry members.

5. Under the trade practice regulations administered by TTB, alcohol beverage wholesalers and retailers are considered "trade buyers."

6. A subset of regulations administered by TTB, known as the "trade practice regulations," prohibit members of the alcohol beverage industry from, among other things, engaging in certain marketing practices which threaten the independence of a trade buyer or unfairly advantages that industry member over their competitors. These trade practice regulations prohibit activities that, directly or indirectly, effect control over trade buyers by causing them to purchase less of a competing product or puts the independence of a trade buyer at risk, including "commercial bribery," a practice involving an industry member providing a bribe to a trade buyer's employee or representative to purchase or promote a certain product to the detriment and exclusion of competing products sold or offered for sale in interstate commerce.

Introductory Allegations

7. PATRICK BRIONES ("BRIONES") was a resident of Newport Beach, California, from approximately 2015 until the present.

8. From approximately 2015 until approximately April 2024, BRIONES worked for a large national grocery store chain identified as Retailer-1A. Retailer-1A was a grocery chain owned by Retailer-1, a company headquartered in Idaho, that sold alcohol through regional supermarkets identified as Retailer-1A and Retailer-1B. Retailer-1A had approximately 300 stores in Southern California. BRIONES was an Assistant Sales Manager for Wines at Retailer-1A. As part of his duties, BRIONES

INFORMATION                                                2

made purchasing decisions for wines carried and sold at Retailer-1A's Southern California grocery stores. BRIONES had previously resided in the Northern District of California and worked as a wine buyer for a grocery store chain with over 100 stores in Northern California that was acquired in approximately 2015 by the parent company of Retailer-1A.

9. Retailer-1's policies included a prohibition on vendor-funded travel and a requirement that gifts be reported to an employee's manager.

10. DISTRIBUTOR-1 was a large national wholesaler and distributor of alcohol beverages for on-premises consumption, such as restaurants and bars, and off-premises consumption, such as grocery or liquor stores. At all times relevant to this Information, DISTRIBUTOR-1 was licensed by the State of California as an importer of wine and distilled spirits, and a wholesaler of the same. DISTRIBUTOR-1 also possessed one or more valid wholesaler permits from TTB, among other permits. DISTRIBUTOR-1 maintained several offices in California, including in the Northern District of California. For purposes of the FAA Act and its regulations, DISTRIBUTOR-1 is both an industry member and a trade buyer.

11. Alcohol suppliers, such as SUPPLIER-1, and others, had sales managers responsible for marketing the supplier's alcohol products. Suppliers, including SUPPLIER-1, maintained budgets for marketing programs, such as discounts and seasonal promotions, as well as cash and other valuable incentives to DISTRIBUTOR-1 salespeople to encourage sales of that supplier's products.

12. BRIONES' role as an Assistant Sales Manager included conducting meetings with employees of DISTRIBUTOR-1, SUPPLIER-1, another alcohol supplier identified as SUPPLIER-2, and others. These meetings included semiannual meetings to review new alcohol products, among others.

### Bribes Paid to Briones

13. BRIONES demanded and accepted bribe payments from employees of DISTRIBUTOR-1, SUPPLIER-1, SUPPLIER-2, and others, in exchange for BRIONES' decision to purchase new alcohol products, purchase more of existing alcohol products, and to save certain alcohol products that Retailer-1A intended to discontinue, to the exclusion of competitors' alcohol products.

14. VENDOR-3 arranged for annual trips for BRIONES, his spouse, and a DISTRIBUTOR-1 employee identified as INDIVIDUAL-9, at a luxury resort in Maui, Hawaii. The trips included

INFORMATION                                      3

massages, room charges, and thousands of dollars in gift cards redeemable at the resort for the guests' spending. Invoices from VENDOR-3 were falsely and misleadingly written to conceal the true nature of the trips and BRIONES' attendance.

15. A representative of SUPPLIER-2, identified as INDIVIDUAL-6, in consultation with INDIVIDUAL-2, a Vice President at DISTRIBUTOR-1, procured a designer bag for BRIONES on or about March 10, 2020. INDIVIDUAL-6 mailed the bag, worth over $2,000, to INDIVIDUAL-2's residence. INDIVIDUAL-2 later confirmed that BRIONES was happy with the "support." INDIVIDUAL-6 further provided at least $2,000 in American Express prepaid gift cards to BRIONES by sending them to INDIVIDUAL-2 in December 2021.

16. DISTRIBUTOR-1, and others, used falsified invoices and receipts to conceal from TTB purchases of gift cards, trips, and other valuable items used as bribe payments to BRIONES.

17. The prepaid gift cards purchased and distributed to BRIONES were not taxed or reported to the Internal Revenue Service as compensation.

COUNT ONE: (18 U.S.C. § 371 – Conspiracy to Defraud the United States)

18. Paragraphs 1 through 17 above are incorporated and realleged as if fully set forth here.

19. From at least on or about September 16, 2017, and continuing until at least January 14, 2024, in the Northern District of California, the defendant,

PATRICK BRIONES,

and others, did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree with one another and with other persons to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Treasury Department, specifically the Alcohol and Tobacco Tax and Trade Bureau, in the administration of federal alcohol commercial bribery laws, by using third-party vendors, and others, to issue false invoices to conceal the procurement and distribution of bribe payments to BRIONES, an employee of a trade buyer, Retailer-1A, through falsified invoices and receipts.

MANNER AND MEANS

The manner and means by which the conspiracy was accomplished included, among other actions, the following:

INFORMATION                                4

20. INDIVIDUAL-2, INDIVIDUAL-9, INDIVIDUAL-10, and other employees of DISTIRBUTOR-1 coordinated bribes procured by alcohol suppliers for BRIONES, directly or indirectly through false and misleading invoices from approved vendors such as VENDOR-2 and VENDOR-3 and through falsified receipts designed to conceal the true nature of the expenditures. INDIVIDUAL-2, INDIVIDUAL-9, and INDIVIDUAL-10, frequently in the presence of employees and representatives of DISTRIBUTOR-1's alcohol suppliers, provided gift cards, cash, and other valuable items to BRIONES to bribe him to purchase certain alcohol products to the exclusion of other alcohol products sold or offered for sale in interstate commerce.

21. INDIVIDUAL-2, INDIVIDUAL-9, INDIVIDUAL-10, and other employees of DISTRBUTOR-1 further coordinated golf trips and vacations for BRIONES, funded through false and materially misleading invoices from VENDOR-2 and VENDOR-3 designed to conceal the true nature of the expenditures, which included luxury accommodations, meals, spa treatments, and spending in resort boutiques and pro shops for BRIONES and others. INDIVIDUAL-2, INDIVIDUAL-9, INDIVIDUAL-10, and other employees of DISTRBUTOR-1 further provided gift cards, cash, and other luxury items to BRIONES to bribe him to purchase certain alcohol products to the exclusion of other suppliers' alcohol products.

22. DISTRIBUTOR-1 employees, including INDIVIDUAL-10, directed third-party marketing companies such as VENDOR-3 to book multiple rooms in the name of a DISTRIBUTOR-1 employee in order to conceal from TTB and others that employees of a trade buyer, including BRIONES, attended trips funded by alcohol industry members.

23. DISTRIBUTOR-1 employees, including INDIVIDUAL-2, INDIVIDUAL-10, and alcohol supplier employees such as BRYAN BARNES of SUPPLIER-1, and others, used false and misleading invoices issued at their direction by VENDOR-2 and VENDOR-3, to conceal the source and nature of the bribes, which were frequently paid out via prepaid gift cards. Those DISTRIBUTOR-1 employees, and others, concealed cash payments to BRIONES by using personal bank accounts and falsified receipts and invoices for reimbursement.

24. BRIONES, BARNES, INDIVIDUAL-2, and others, would communicate by text message, including group chats, about the bribes they paid to BRIONES, and BRIONES' purchase of alcohol products distributed by DISTRIBUTOR-1.

25. BRIONES used prepaid gift cards that he received from DISTRIBUTOR-1 employees or alcohol supplier employees, including BARNES, to purchase flights and pay for other expenses on trips in order to further conceal from his employer and TTB the bribe payments he received.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California, and elsewhere:

### Luxury Items

26. During 2015, BRIONES accepted a luxury watch worth thousands of dollars from INDIVIDUAL-11, a Vice President of DISTRIBUTOR-1. INDIVIDUAL-11 provided BRIONES with additional luxury watches in 2017 and 2018, each worth thousands of dollars.

27. On or about March 10, 2020, INDIVIDUAL-2 arranged for a designer bag worth approximately $2,290 to be purchased by INDIVIDUAL-6 of SUPPLIER-2, whose products DISTRIBUTOR-1 distributed. The bag was mailed by INDIVIDUAL-6 to INDIVIDUAL-2's personal address. On March 15, 2020, INDIVIDUAL-2 confirmed by text message that he had received the designer bag for BRIONES.

### Vacations and Golf Trips

28. INDIVIDUAL-10, INDIVIDUAL-2, INDIVIDUAL-9, and other employees of DISTRBUTOR-1 arranged lavish vacations for BRIONES. Virtually all trips arranged through DISTRIBUTOR-1 employees were funded or paid for by DISTRIBUTOR-1's alcohol suppliers or through payments from "local marketing funds" set up between DISTRIBUTOR-1 and a supplier for legitimate purposes, such as marketing, brand education, and promotional products.

29. Between 2017 and 2020, INDIVIDUAL-9 directed VENDOR-3 to arrange annual interstate vacations to a resort in Maui, Hawaii, for INDIVIDUAL-9, a relative, and BRIONES and his relative. A January 2019 Hawaii trip for BRIONES was arranged by VENDOR-3 and funded via Invoice #3487 for $20,000 issued to DISTRIBUTOR-1 for "[SUPPLIER-4]- [RETAILER-1A] Regional

1  Education Seminar 2018." The January 2020 Hawaii trip arranged by VENDOR-3 for BRIONES was funded via Invoice #4129 for $30,000 issued to DISTRIBUTOR-1 for "[RETAILER-1A] Seminar 2019."

30. INDIVIDUAL-10, INDIVIDUAL-2, and others arranged for interstate trips from California to Las Vegas, Nevada, annually, from approximately 2018 until at least November 5, 2022. These trips, which did not include business meetings, involved room accommodations, golf reservations, dinners, casino chips for gambling, and prepaid gift cards. Both VENDOR-2 and VENDOR-3 arranged Las Vegas trips involving BRIONES and employees of DISTRIBUTOR-1 and others. In order to conceal the true nature of the expenses, on or about June 24, 2020, an executive at DISTRIBUTOR-1 directed VENDOR-3 to remove references to BRIONES in an invoice.

31. INDIVIDUAL-10, INDIVIDUAL-2, and other DISTRIBUTOR-1 employees arranged for other golf trips and vacations for BRIONES that included themselves and employees of alcohol suppliers. These trips included a May 4, 2021, trip to Pebble Beach, California, within the Northern District of California, funded by SUPPLIER-5. INDIVIDUAL-10, INDIVIDUAL-2, and others, organized trips for BRIONES and themselves at exclusive golf and other resorts in Florida, Oregon, and Cabo San Lucas, Mexico, among other destinations. These trips were funded by numerous alcohol suppliers distributed by DISTRIBUTOR-1, including SUPPLIER-1 and others.

### Gift Cards and Cash

32. Beginning no later than 2019, employees of DISTRIBUTOR-1, in coordination with alcohol suppliers distributed by DISTRIBUTOR-1, began providing prepaid gift cards worth as much as $1,000 each to BRIONES in exchange for his agreement to carry, increase purchases of, or prominently display certain wines in Retailer-1A's stores.

33. BARNES directed VENDOR-2 to procure prepaid Visa gift cards, which he provided to BRIONES in amounts as high as $10,000 per exchange for placement of several new SUPPLIER-1 items. For example, on December 10, 2020, VENDOR-2 issued five Invoices to SUPPLIER-1 as follows:

//

INFORMATION                    7

| Invoice No. | Amount | Description |
|---|---|---|
| 7441 | $5,540 | "[RETAILER-1A] Q3 Planner / Ad Incentive" |
| 7442 | $3,381.99 | "[RETAILER-1A] Jan/Feb Planner Incentive" |
| 7443 | $3,336 | "Nov/Dec Planner Incentive" |
| 7444 | $5,548 | "[October November December] Merchandising Incentive" |
| 7445 | $3,340.75 | "Branded Apparel" |

On December 18, 2020, after invoicing SUPPLIER-1, VENDOR-2 ordered 16 $1,000 prepaid Visa gift cards, among others, from a gift card retailer headquartered in the Northern District of California. Those gift cards were shipped by mail to BARNES in Hermosa Beach, California. BARNES provided at least two of the 16 gift cards to BRIONES, who spent them on personal purchases. On or about February 14, 2022, BRIONES made purchases using one of the $1,000 prepaid Visa cards (card number ending 6743) at stores in the Northern District of California.

34. On or about September 14, 2020, INDIVIDUAL-6 purchased two $1,000 American Express prepaid gift cards and sent them to INDIVIDUAL-2 to provide to BRIONES in exchange for purchasing SUPPLIER-2 wine brands for Retailer-1A locations. INDIVIDUAL-6 later had the prepaid gift cards mailed to INDIVIDUAL-2's residence.

35. Beginning in approximately 2022, DISTRIBUTOR-1 employees, including INDIVIDUAL-2, INDIVIDUAL-10, INDIVIDUAL-12, and others, provided BRIONES with cash bribes at in-person meetings in Southern California.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO: (27 U.S.C. § 205(c) – Commercial Bribery and 18 U.S.C. § 2 – Aiding and Abetting)

36. Paragraphs 1 through 17 and 20 through 35 above are incorporated and realleged as if fully set forth here.

37. On or about May 4, 2021, in the Northern District of California, and elsewhere, the defendant,

PATRICK BRIONES,

a resident of Newport Beach, California, did knowingly make, cause, and aid and abet the inducement of a trade buyer through bribes affecting interstate commerce, specifically, by accepting a golf trip and

accommodations in Pebble Beach, California, on behalf of SUPPLIER-5, and coordinated by INDIVIDUAL-10 and INDIVIDUAL-12, for the purpose of inducing Retailer-1A to purchase SUPPLIER-5's products to the exclusion of competitors' products sold or offered for sale in interstate or foreign commerce, and placing Retailer-1A's independence at risk.

All in violation of Title 27, United States Code, Section 205(c) and Title 18, United States Code, Section 2.

CRAIG H. MISSAKIAN
United States Attorney

Dated: September 23, 2025.

*/s/ Colin Sampson*
ALEXANDRA SHEPARD
COLIN C. SAMPSON
Assistant United States Attorneys

FILED
Sep 23 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COVER SHEET

***Instructions:*** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

**CASE NAME:** USA v. PATRICK BRIONES

**CASE NUMBER:** CR 4:25-cr-00302 AMO

| Field | Response |
|---|---|
| Is This Case Under Seal? | Yes   No ✓ |
| Total Number of Defendants: | 1 ✓   2-7   8 or more |
| Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326? | Yes   No ✓ |
| Venue (Per Crim. L.R. 18-1): | SF   OAK ✓   SJ |
| Is this a potential high-cost case? | Yes   No ✓ |
| Is any defendant charged with a death-penalty-eligible crime? | Yes   No ✓ |
| Is this a RICO Act gang case? | Yes   No ✓ |

**Assigned AUSA (Lead Attorney):** COLIN SAMPSON, AUSA

**Date Submitted:** 09/23/2025

**Comments:**
Information

RESET FORM    SAVE PDF

Form CAND-CRIM-COVER (Rev. 11/16)